

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Harry Knox, Chairman
State Board of Control
Austin, Texas

0-2443

Dear Sir:

Opinion No. 0-2443
Re: (1) Does the State have title
and right of possession to
cigarette tax stamps which
have been delivered to Trea-
surer but have not been used
or paid for?
(2) What formalities are nec-
essary for an emergency pur-
chase of cigarette tax stamps?

We have your letter of June 4, 1940, which reads
as follows:

"In your opinion No. 0-2859, your depart-
ment gave as its opinion that the requisition
given by the State Board of Control to the Steck
Co. for 100,000,000 cigarette tax stamps, dated
September 19, 1939, did not fulfill the con-
stitutional requirements for State printing con-
tracts, and that therefore, the invoices for
these stamps could not be legally approved for
payment by the Board of Control.

"All of the tax stamps printed under this
requisition have been delivered to the State
Treasurer. At the present time, the Treasurer
has on hand approximately 31,000,000 of the
100,000,000 stamps printed under this requisition.

"In view of these facts, your valued opinion
is respectfully requested on the following ques-
tions:

"1. Does the State of Texas now have title
and the right of possession to the above-
mentioned tax stamps which have heretofore
been delivered to the State Treasurer, but
which have not yet been used?

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Harry Knox, Page 2

"2. If your answer to the above question
is 'no', and assuming that an emergency
caused by the lack of tax stamps for sale
by the State will thereby be created, what
formalities will have to be observed by
the Board of Control in order to secure
legally a sufficient supply of such
stamps to last for the duration of said
emergency?"

You have heretofore furnished us for examination
the original contract between the State Board of Control and
The Steck Company executed July 6, 1937, whereby The Steck
Company agreed to deliver 300,000,000 cigarette tax stamps
to the Cigarette Tax Stamp Board. You have also furnished
us with a photostatic copy of the requisition, dated Sept-
ember 10, 1939 and approved September 19, 1939, whereby the
additional 100,000,000 cigarette tax stamps referred to in
your letter were purported to have been contracted for.
Although, as pointed out in our opinion No. O-2339, the
contract of July 6, 1937 had expired, and the requisition
approved on September 19, 1939 did not fulfill the consti-
tutional requirements, it cannot be questioned but that it
was the intention of the contracting parties that the pur-
chase of the additional 100,000,000 stamps should be govern-
ed by the terms and conditions of the contract of July 6,
1937. Paragraph VI of said contract reads as follows:

"That in consideration of the party of the
second part fully performing and keeping each
and every obligation on its part, and the de-
livery of such stamps within the time and in
the manner as provided in this contract or
memorandum of agreement, together with the
specifications, the party of the first part,
agrees to pay to the party of the second part
eleven and ninety-five one hundreths (11 95/100)
cents per thousand for each and every thousand
of said stamps delivered by the party of the
second part to the party of the first part if
and when accepted by the party of the first part
at Austin, Texas, and an additional $100.00 for
each change of denomination." (Emphasis ours)

It is apparent from the above quoted provision, that it was the mutual intention of the Board of Control and The Steck Company, when the requisition for the additional 100,000,000 stamps was approved, that payment in cash was contemplated upon delivery of the stamps "if and when accepted". We must look, therefore to the rules governing cash sales, as distinguished from sales on credit in order to ascertain where the title and right of possession of these stamps now resides in the light of our ruling in Opinion No. O-2339 that the requisition of September 1939 did not fulfill the constitutional requirements for a contract for printing.

James, C.J. in Ewing v. Sylvester, 94 S.W. 405 (Ct. of Civil Appeals, 1906) announced the rule relating to passage of title in cash sales which has been consistently followed in Texas:

"Where personal property is sold, a part of the consideration to be paid in cash and the rest in agreed payments, no title passes until the cash payment is actually made. Where a sale is made on the condition that a cash payment shall be made, and possession of the property is obtained before such payment, without the cash payment being waived, title does not pass. A waiver must be made voluntarily, and it is a question of fact that must be made to clearly and plainly appear ... Mechem on Sales, sec. 545, states: 'Where a sale is thus to be for cash and payment is found to be a condition precedent, it is clear that if the buyer obtains the goods by giving for the price a check or draft which is subsequently dishonored, there is no payment, and the title does not pass.' ..."

In First National Bank of Littlefield v. Neel, (Ct. of Civil Appeals, Amarillo, 1928), 10 S.W. 2nd 408, the court held that title to 45 bales of cotton had not passed to buyer where the buyer's bank draft given in payment therefor was not honored, even though the cotton had been delivered to buyer.

Honorable Harry Knox, Page 4

> "In Continental Bank and Trust Company v.
> Hartman (Tex. Civil Appeals) 129 S.W. 179,
> Talbot, J. held that, where a sale is for cash,
> a delivery subject to the payment of the price
> passes no title."

Bond, J. of the Dallas Court of Civil Appeals in
Williams v. Greer, 122 S.W. 2nd 247, at p. 249 quoted with
approval the following pronouncement of the Pennsylvania
Court in Frech v. Lewis, 218 Pa. 141, 67A. 45:

> "Possession, however, having passed and the buyer,
> by the act of the seller, having been invested
> with the indicia of ownership, the policy of our
> law requires that this situation - the possession
> in one and the right of property in another - shall
> continue no longer than is necessary to enable
> the seller to recover the goods with which he has
> parted. The law gives the seller the right, in
> such case, to reclaim his goods; but he must do
> so promptly; otherwise he will be held to have
> waived his right, and can only thereafter look to
> the buyer for the price."

A question quite similar to the one here presented
was before the Texas Commission of Appeals in Stieff v. City
of San Antonio, 130 Tex. 594, 111 S.W. 2nd 1086. There, the
City of San Antonio had purchased a piano from the Walthall
Music Company for $1300 to be paid on delivery of the piano.
After the piano had been delivered, the City Auditor in
accordance with an ordinance refused to permit delivery of
the warrant issued in payment therefore for the reason that
the Walthall Music Company was indebted to the City for
certain taxes.

Thereafter the Walthall Music Company was adjudged
bankrupt, and the Stieff Co., who had shipped the piano to
the Walthall Co. on consignment laid claim to the piano. Said
the court:

> "The city, having thus acquired possession
> of the piano, asserts the right to keep it with-
> out paying for it, as it solemnly promised to
> do. The city was not misled, deceived, or de-

frauded; it received the piano contracted for. The city has paid nothing, given up nothing, suffered nothing. There is no semblance of an estoppel in favor of the city against the manufacturer, the owner of the piano. Thus there is no possible ground upon which the city can claim the title or right of possession of the piano."

Whether the Steck Company has legal title at this time or merely a right to repossession is relatively unimportant as indicated by the following quotation from Peoples State Bank v. Brown, 80 Kansas 520, 103 Pac. 102, 23 L.R.A. (N.S.) 824, 31 A.L.R. 587:

"As a practical necessity, to avoid the inconvenience of requiring the seller of an article to keep one hand upon it until with the other he grasps the currency tendered in payment, there must be some relaxation of this rule. Delivery and payment, as a practical matter, cannot be absolutely simultaneous. Some slight interval between the two acts is inevitable, and the criterion upon which the courts have agreed with substantial unanimity is that such interval does not conclusively prove a total abandonment of title and the right of possession by the seller, unless, under all the circumstances of the case, it in fact shows that result to have been intended. Some ingenuity has been exercised with doubtful profit in defining the character of the right remaining in the seller after delivery and before payment. Whether it is more properly described as a lien, a retention of title, or an option to rescind the contract, is not very important so far as affects the solution of the problem presented here. It is a right of the seller to repossess himself of the goods if the buyer fails in the performance of the agreement on his part which was intended to be contemporaneous with the delivery. It is a peculiar right growing out of a peculiar situation, and it is not

necessary to give it a name the use of which might seem to decide controversies growing out of other relations."

Applying the rules announced in the foregoing authorities to the fact situation presented in your letter, it is our opinion that the Steck Company has the right to demand return of the cigarette tax stamps recently delivered to the State Treasurer upon being advised that the contract and requisition under which they were presumably delivered is invalid. The seller's right of repossession of goods delivered but not paid for on a cash sale must be exercised within a reasonable time and may be waived by lack of diligence or agreement of the parties.

We turn now to a consideration of your second question. As stated in our opinion No. 0-2339, all contracts for printing, whether in cases of emergency or not must conform to the requirements of Article 16, Section 21 of the Constitution of Texas, of which the pertinent provisions are that the printing "shall be performed under contract, to be given to the lowest responsible bidder, below such maximum price and under such regulations, as shall be prescribed by law ... and all such contracts shall be subject to the approval of the Governor, Secretary of State and Comptroller."

In the event of an emergency, Article 618, Revised Civil Statutes, 1925, provides:

"The Board may in its discretion make such temporary arrangement to meet the emergency as the public interest may demand."

Assuming that the Board of Control, in the exercise of its reasonable discretion, determines that an emergency now exists which requires the immediate purchase of cigarette tax stamps, it is our opinion that the Board may enter into a contract for the purchase of such stamps from the lowest responsible bidder after such advertising for bids as the Board may deem proper.

Honorable Harry Knox, Page 7

In such emergency, it is not necessary that the requirements of Article 608 for six weeks advertising in six newspapers be followed. Article 16, Section 21 of the constitution must nonetheless be complied with, so that such contract must "be given to the lowest responsible bidder" and "be subject to the approval of the Governor, Secretary of State and Comptroller".

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Walter R Koch

Walter R. Koch
Assistant

WRK:rw

APPROVED JUN 11, 1940

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN

